**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                                                  **Case No.: 8:18-mj-1523-T-AAS**

**DAVID ALLEN BOILEAU**

_____/

## MEMORANDUM IN SUPPORT OF A FINDING OF A LACK OF PROBABLE CAUSE

COMES NOW, the Defendant, DAVID ALLEN BOILEAU, by and through undersigned counsel, and moves this Honorable Court to make a finding that the Government has not met their burden to establish probable cause to detain Mr. Boileau. Specifically, the Government has failed to show that Mr. Boileau took anticipatory action to make it impractical or impossible for someone to make a report to law enforcement, or that there is a "reasonable likelihood" under the circumstances that at least one relevant communication would have been made to a federal officer, as required by 18 U.S.C. § 1512(a)(2)(C). *Fowler v. U.S.*, 563 U.S. 668 (2011). As grounds for this Motion, Mr. Boileau states the following:

### PROCEDURAL HISTORY

David Boileau was arrested on June 5, 2019, on a Criminal Complaint alleging violations of 42 U.S.C. § 3136 and 18 U.S.C. § 1512(a)(2)(C). *See* 8:19-mj-1523-AAS, Doc. 1. He was brought before this Court for his initial appearance, where the Court appointed the Federal Public Defender and held a preliminary

hearing on the issue of probable cause. Doc. 5. Following the testimony of Pasco County Detective and FBI Task Force Officer Siobhan Meseda, and arguments by the Government and counsel for Mr. Boileau, this Court ordered the Defendant to file a memorandum on the issue of probable cause as it specifically related to the allegation that the Defendant violated 18 U.S.C. § 1512(a)(2)(C). Doc. 6 The Court did not make a probable cause finding at the hearing.

## FACTUAL HISTORY

On January 21, 2019, Pasco County resident L.C. contacted local law enforcement to report a disturbance.[1] At the scene, deputies made contact with L.C., who reported that he had made contact with his neighbor, David Boileau, in the roadway. L.C. reported, in relevant part, that he observed Mr. Boileau reach into his pocket and throw "nails or screws" at a car parked in the driveway of the property across the street from L.C.'s home. *Id* at ¶ 4. L.C. instructed Mr. Boileau to pick up the nails or screws, but Mr. Boileau refused to do so and walked away. *Id*. at ¶ 7. The owner of the property across the street from L.C. was not home at the time. *Id*.

In response to this report, Deputies from the Pasco County Sheriff's Office ("PCSO") reported to the scene, where they took L.C.'s statements and observed the location of the screw-throwing incident. *Id*. at ¶ 8. The car was not damaged and Mr. Boileau was no longer present, so the PCSO officers made contact with

---

[1] The facts contained in this history are derived from a Criminal Complaint found at Document 1 ("Doc. 1") of case number 8:19-mj-1523-AAS.

the owner of the house and provided her with information on seeking a protective

order to prevent further contact. *Id.*

On January 22, 2019, L.C. was watching the house across the street when

he saw Mr. Boileau come out of that house through the front door. *Id.* at ¶ 11. He

called PCSO and reported his observations. While L.C. was waiting for the

deputies to arrive, he made contact with Mr. Boileau in the roadway of their

neighborhood. *Id.* During this discussion, Mr. Boileau stated that he knew that

L.C. had contacted the sheriff's office regarding the incident with the screws *the*

*day before*, and that he was going to kill L.C. *Id.* (emphasis added).

Detective Maseda testified under oath at the preliminary hearing that the

basis for accusing Mr. Boileau of a violation of 18 U.S.C. § 1512(a)(2)(C) is the

threat that Mr. Boileau made to L.C. on January 22, 2019, related to reporting the

screw-throwing incident.

## MEMORANDUM OF LAW

**I.**      **Mr. Boileau had no intent to prevent L.C. from taking any future action when they spoke on January 22, 2019, because the comments that he made were referencing a communication that Mr. Boileau knew had already taken place.**

Criminal conduct under 18 U.S.C. § 1512(a)(2)(C) concerns only

"*anticipatory* action" intended to "prevent" *future* communications to federal

officials. *Fowler*, 563 U.S. 668 (2011) (emphasis added). In *Fowler*, a defendant

was charged with violation of 18 U.S.C. § 1512(a)(1)(2) for killing a police officer

with the intent to prevent future communication to any and all officers.

Specifically, Charles Fowler killed a police officer in order to prevent that officer from telling other law enforcement about an ongoing conspiracy to commit a bank robbery. The issue considered by the Court in *Fowler* was the standard by which the government was required to prove a violation of 18 U.S.C. § 1512(a)(1)(C), when an individual acts with the general intent to "prevent" such communications to law enforcement, without any specific individual or agency in mind. In doing so, the Court considered the definition of what it means to "prevent" communication within the meaning of 18 U.S.C. § 1512(a)(1)(2). It held that to prevent such communications under the statute, a defendant must prevent communications that were "reasonably likely" to be made to federal law enforcement.

The forward-looking nature of 18 U.S.C. § 1512(a)(2)(C) is inherent in the plain language of the statute. To "hinder," to "delay," or to "prevent" any action, or to attempt to do so, is to act with the goal of exerting influence over a future event. The evidence before this Court is that Mr. Boileau made a statement to L.C. to communicate that he knew that L.C. was the person that had reported his conduct from the day before to law enforcement and that he would take action to retaliate for that completed action. For this reason, Mr. Boileau's conduct is outside of the scope of behavior governed by 18 U.S.C. § 1512(a)(1)(C), and this Court should find that there is no probable cause to believe that Mr. Boileau violated 18 U.S.C. § 1512(a)(1)(C).

II. **The Government cannot prove that there is a reasonable likelihood that a communication to local law enforcement about a neighborhood disturbance would result in communication to federal law enforcement officers, because the likelihood of communicating with federal law enforcement about the type of minor property crimes alleged in this incident is so remote.**

In instances where there is no evidence the defendant "has in mind a particular individual or a particular set of individuals with whom he fears the victim might communicate," the Government must show a "reasonable likelihood that…at least one relevant communication would" be made to a "federal law enforcement officer." *Fowler*, 563 U.S. at 677. In other words, "the likelihood of communication to a federal officer" must be "more than remote, outlandish, or simply hypothetical." *Id.* at 678. The "reasonable likelihood" standard serves to exclude "many instances of witness tampering in purely state investigations and proceedings" from the scope of 18 U.S.C. § 1512. *Id.* at 675. Without the "reasonable likelihood" standard, the statute would extend "well beyond the primarily federal area that Congress had in mind." *Id.*

The "reasonable likelihood" standard was adopted to raise the bar from mere "possibility" on the fear that a "possible [standard] would transform a federally oriented statute into a statute that would deal with crimes, investigations, and witness tampering that, as a practical matter, are purely state in nature." *Id.* at 677. To maintain a meaningful federal nexus requirement, the government must show more than a "tangential federal interest." *Id.* at 681 (Scalia, J. concurring in the judgment). The statute was created to preserve "the

integrity and effectiveness of *federal* prosecutions, and where they are not clearly involved…a federal…prosecution has no proper place." *Id.*

Here, the Government has not shown that the defendant thought specifically about a particular law enforcement officer or officers as the recipient of a potential communication made by L.C. Thus, the government must show a "reasonable likelihood" that at least one communication by L.C. would be made to a federal law enforcement officer. They have failed to make that showing.

The crimes alleged in this incident were characteristically state crimes which did not involve the instrumentalities of commerce or any conduct that would cross state lines. In fact, Mr. Boileau was convicted of misdemeanor trespass for his conduct on January 22, 2019.[2] Accordingly, it is not reasonably likely that the report of a misdemeanor offense (or even multiple misdemeanor offenses) would result in communication to a federal officer.

Mr. Boileau's statement to L.C. was made with respect to "crimes…that, as a practical matter, are purely state in nature." *Id.* at 677. This specific situation, where a federal statute transforms into "a statute that would deal with crimes, investigations, and witness tampering that, as a practical matter, are purely state in nature," is the situation that the *Fowler* Court sought to prevent when it established the "reasonable likelihood" standard. This is particularly true given that the majority of the conduct that forms the basis for the federal accusation -

---

[2] *See* Case Number 2019 MM000783MMAXWS, in the County Court of the Sixth Judicial Circuit for Pasco County, Florida.

that Mr. Boileau criminally interfered with the right to fair housing - took place after the interaction that forms the basis for the allegation that he engaged in federal witness tampering.[3] *Id.* Detective Maseda's testimony from the preliminary hearing is that the threat made by Mr. Boileau to L.C. on January 22, 2019, is the Government's only basis for accusing Mr. Boileau of a violation of 18 U.S.C. § 1512.

In a situation where Mr. Boileau stood accused of federal witness tampering *after* he was alleged to have committed the series of acts that, in their totality, form the basis of the accusation that he criminally interfered with the right to fair housing, then the Government might have a colorable argument that there was a reasonable likelihood that this conduct would have been communicated to federal law enforcement. The case before this Court does not present such a situation. The Government cannot prove that there is a reasonable likelihood that the information that L.C. communicated to law enforcement on January 22, 2019, would have resulted in relevant communication to federal law enforcement, absent the conduct that occurred after that date. For this reason, the likelihood that Mr. Boileau's conduct on or before January 22, 2019, would be communicated to federal law enforcement is "remote, outlandish, or simply hypothetical." This

---

[3] *See* Case Number 8:19-mj-1523-AAS, Doc. 1, ¶20 – 33; detailed allegations related to Mr. Boileau's statements and conduct which occurred *after* January 22, 2019, in support of their position that he violated 42 U.S.C. § 3631.

Court should find that there is no probable cause to believe that he violated 18 U.S.C. § 1512(a)(1)(C).

## CONCLUSION

WHEREFORE, this Court should find that no probable cause exists to believe that Mr. Boileau violated 18 U.S.C. § 1512(a)(2)(C).

DATED this 10th day of June, 2019.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*/s/ Sara L. Mieczkowski*
Sara L. Mieczkowski
Florida Bar No.0085143
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone:   (813) 228-2715
Facsimile:   (813) 228-2562
Email: Sara_Mieczkowski@fd.org

8

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of June, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Francis D. Murray.

/s/ *Sara L. Mieczkowski*
Sara L. Mieczkowski
Assistant Federal Defender