UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:19-mj-1523-T-AAS

DAVID ALLEN BOILEAU

**UNITED STATES' RESPONSE TO BOILEAU'S MEMORANDUM FOR A FINDING OF A LACK OF PROBABLE CAUSE**

The United States responds as directed to David Allen Boileau's memorandum in support of a finding of a lack of probable cause. Docs. 6, 8. For the reasons that follow, the criminal complaint authorized by the Honorable Amanda A. Sansone, Doc. 1, is supported by probable cause. This Court should find that probable cause exists to support both charges in the complaint: violations of 42 U.S.C. § 3631 (criminal interference with a right to fair housing) and 18 U.S.C. § 1512(a)(2)(C) (tampering with a witness, victim, or informant by physical force or threat communication).

**I.     Background**

On June 5, 2019, federal agents arrested Boileau on a criminal complaint alleging violations of 42 U.S.C. § 3631 and 18 U.S.C. § 1512(a)(2)(C). Doc. 1. Later that day, Boileau had his initial appearance and exercised his right to a preliminary hearing under Federal Rule of Criminal

Procedure 5.1. At that hearing, a Federal Bureau of Investigation Task Force Officer testified in support of the complaint. Doc. 5. The affidavit was also filed in the record in support of the complaint. Doc. 1. Boileau did not offer any witnesses or evidence at the hearing. Doc. 5.

Following the hearing and brief argument, this Court stated that it believed probable cause existed for every element of every charge in the complaint, absent one narrow issue: whether probable cause existed that Boileau's threatened use of physical force, or attempt at the same, satisfied section 1512(a)(2)(C) because the statement did not specifically reference a federal official or expressly target the investigation into a federal offense. This Court asked the parties to brief those specific topics.

On June 10, 2019, Boileau filed a memorandum attacking the sufficiency of probable cause. Doc. 8. The United States responds as directed.

## II.     Probable Cause Standard

Under Rule 5.1(a), the defendant is entitled to a preliminary hearing. The standard for that hearing is probable cause. Fed. R. Crim. P. 5.1(e). Probable cause exists when facts and circumstances evidence a reasonable belief that the defendant has committed a crime. *E.g., Beck v. Ohio*, 379 U.S. 89 (1964); *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007). Probable cause is a "totality of the circumstances" determination. *See Illinois v. Gates*,

462 U.S. 213 (1983). It is a practical, common sense decision that there is a fair probability that the crime occurred. *See id*. The analysis should involve not legally technical, but rather factual and practical considerations of everyday life upon which reasonable prudent men act. *See Brinegar v. United States*, 338 U.S. 160 (1949).

### III. Argument

Boileau, without the benefit of Rule 16 discovery—or any discovery for that matter—has filed what amounts to a Rule 29 motion. Boileau argues without the benefit of discovery that the United States cannot establish his intent to prevent future communication by L.C. to law enforcement. Doc. 8 at 3. Boileau, again without the benefit of discovery, argues also that the United States cannot prove that a reasonable likelihood exists that information relayed to local law enforcement by L.C. would result in communication to federal officials. Doc. 8 at 5.

Boileau's selective interpretation of the facts of this case is inconsistent with the posture of this matter—a Rule 5.1 probable cause hearing. But more importantly, Boileau asks this Court to draw certain selective inferences in an effort to mask a necessary concession on the specific issues that this Court asked the parties to brief—*the law does not require that the victim have made communications directly to federal law enforcement officers, nor does the law require*

*that the defendant specifically intend to disrupt a federal investigation or proceeding*. All the law requires to establish a federal nexus is that there was a reasonable likelihood that a relevant communication would have been made to a federal officer. *Fowler v. United States*, 563 U.S. 668, 670 (2011). Under that standard, there is more than probable cause to believe that Boileau has violated section 1512(a)(2)(C).

As relevant here, section 1512(a)(2)(C) criminalizes the threat (or attempted threat) of physical force against any person, with the intent to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings." An official proceeding need not be pending or about to be instituted at the time of the offense. 18 U.S.C. § 1512(f)(1). No state of mind need be proven with respect to the circumstance that the nature of the proceeding is federal, nor with respect to the federal nature of the law-enforcement officer. 18 U.S.C. § 1512(g)(1)–(2).

To establish that the defendant intended to prevent communications to federal law-enforcement officers, the government merely must show a reasonable likelihood that had the victim communicated with law-

enforcement officers, at least one relevant communication would have been made to a federal law-enforcement officer.[1] *Fowler v. United States*, 563 U.S. 668, 677 (2011). Put another way, where the defendant threatens physical force against a victim with an intent to prevent communication with law-enforcement officers generally, that intent includes an intent to prevent communications with federal law-enforcement officers only if it is *reasonably likely* under the circumstances that (in the absence of the threat) at least one of the relevant communications would have been made to a federal officer. *Cf. Fowler*, 563 U.S. at 677–78.

Here, the record before the Court clearly establishes probable cause that it is reasonably likely under the circumstances that at least one of the relevant communications L.C. could have conveyed at the time Boileau threatened him would have been made to a federal law-enforcement officer. In fact, that is not only reasonably likely, <u>but that is actually what did occur</u>. Despite Boileau's chilling death threat, L.C. reported Boileau's conduct to responding local law enforcement, who in turned relayed the information to federal hate-crime investigators. And L.C. later met with both local and federal officials on

---

[1] *Fowler* addressed a different subsection of 1512(a), that is, 1512(a)(1)(C), which applies when a defendant "kills or attempts to kill another person." But that adjacent provision otherwise has identical language to that found in (a)(2)(C). Courts have therefore unsurprisingly extended *Fowler*'s holding to (a)(2)(C). *See, e.g., Lobbins v. United States*, 900 F.3d 799, 802 (6th Cir. 2018); *United States v. Johnson*, 554 F. App'x 586, 587 (9th Cir. 2014).

multiple occasions to discuss Boileau's past and ongoing criminal conduct in the neighborhood. *See* Doc. 1 at 11–12 (discussing federal civil rights investigators interviewing L.C. for a second time). As the United States proffered at the initial appearance hearing, the FBI had already been notified Boileau's conduct before Boileau's January 22, 2019, death threat against LC. Multiple meetings between L.C. and federal officials later yielded a great deal of information directly relevant to this federal hate-crime investigation. L.C. also detailed Boileau's ongoing attempt to intimidate and harass L.C. Doc. 1 at 13.

Indeed, even if Boileau's hand had instead been a real gun, resulting in L.C.'s death on January 22, 2019, a federal nexus would still exist. By January 22, 2019, a likelihood of communication of L.C.'s information to a federal officer was more than remote, outlandish, or simply hypothetical. *See Fowler*, 563 U.S. at 678. At that point, involvement by federal law enforcement officers was almost assured. By the time Boileau had threatened L.C.'s life, L.C. had witnessed the following acts by Boileau that bare directly on a federal criminal civil rights violation—(1) Boileau asked L.C. who the neighbors (the victims) were; (2) Boileau stated that the victims who live next door were "an eyesore to this country, and I am here to protect it against people like that…Fuckin' Iraquis, I am going to clean up America!...they

don't belong here;" (3) Boileau told L.C. "you didn't see anything" and then threw screws onto a car parked on the victim's property (an application of physical force against property); (4) Boileau stated "The US needs to rid the country of all of them…We will get rid of them one way or another;" (5) Boileau yelled at the victim's house; (6) Boileau stood on a pile of wood staring at the victims house and then attempted to scale the victim's fence; (7) Boileau broke into the victim's house and came out the front door; (8) Boileau rummaged through the victim's mailbox; and (9) Boileau commented on the U.S. Immigration correspondence in the victim's mail. Doc. 1 at 1–4.

Not only had L.C. witnessed these events, but probable cause exists that Boileau knew that L.C. had witnessed these events. *See* Doc. 1 at 1–4. Counsel's arguments that Boileau didn't intend to prevent or hinder L.C. from future communication of that information to law enforcement simply misapplies the standard applicable to this proceeding. Characterizing Boileau's intent in making a death threat against L.C. as purely retaliatory in nature, as counsel does, is a self-serving inference that counsel offers without the benefit of any discovery. It is equally, and perhaps more likely, though, that Boileau threatened L.C. because he had just broken into the Iraqi-American family's house and gone through their mail, planned future intimidating antics motivated by their national origin and religion, and wanted to chill L.C.'s

future (and ongoing) responsiveness to law enforcement. Indeed, as explained in the 33 paragraphs of facts offered in the affidavit, Boileau spent the next several months harassing the victim right in front of L.C.'s house. *See generally* Doc. 1. In any event, counsel's alternative explanations for the intent behind Boileau's death threat is irrelevant to this probable cause proceeding.

Moreover, counsel's argument that *Fowler*'s reasonable likelihood standard cannot be satisfied in this case because Boileau was only committing minor property crimes completely misses the mark. Counsel's attempt to mask the information possessed by L.C. as nothing more than "a neighborhood disturbance" both ignores the standard applicable to this proceeding and also misapplies *Fowler*.

*Fowler* instructs that "the likelihood of communication to a federal officer" must be "more than remote, outlandish, or simply hypothetical." *See Fowler*, 563 U.S. at 678. Nothing is remote, outlandish or simply hypothetical about L.C.'s information reaching the FBI and being pertinent to a federal investigation, either through relay by a local law-enforcement task force or through L.C. directly reporting that information to federal authorities. *Cf. id.* at 687. By January 22, 2019, L.C. had witnessed yet another attempt by Boileau to terrorize an Iraqi-American immigrant's enjoyment of their residence. And in the days and months that followed, L.C. witnessed many more similar acts.

Characterizing Boileau's conduct as "state crimes," "unlikely to cross state lines," "neighborhood disturbance[s]," and "minor property crimes," as counsel does (Doc. 8 at 5–9), ignores the bigoted motive that Boileau put on full display before, during, and after his commission of those acts—all of which L.C. had personally witnessed by January 22, 2019.[2] Under counsel's logic, intimidating a witness who had information on a cross-burning would not satisfy *Fowler* because cross burnings are a matter for the local fire department.

That Boileau's threat to L.C. came early on in Boileau's campaign to intimidate an Iraqi-American family on the basis of religion and national origin is precisely the type of witness tampering targeted by the statute. As the Supreme Court noted in *Fowler*:

> Witness tampering may prove more serious (and more effective) when the crime takes place before the victim has engaged in any communication at all with law enforcement officers—at a time when the precise communication and nature of the officer who may receive it are not yet known. Cf., *e.g.,* S.Rep. No. 97–532, pp. 14, 15 (1982),

---

[2] This Court should disregard counsel's argument that the government's only theory of prosecution for Boileau having violated section 1512 is his conduct on January 22, 2019, because a government witness testified that that conduct was the basis for the charge. This Court's analysis should be guided by the law and the evidence before the Court. A fact witness's legal interpretation of the charge is irrelevant. There are, in fact, multiple theories by which probable cause is established on the current record for a violation of section 1512. The theories even extend beyond L.C. as a victim. For example, probable cause exists that Boileau's conduct toward the victim's sister in this case was an attempt to threaten physical force in order to prevent her from cooperating with federal investigators. *See* Doc. 1 at 26. For brevity's sake, we do not detail alternative grounds here.

U.S.Code Cong. & Admin.News 1982, pp. 2515, 2520–21 (statute applies "to offenses against witnesses, victims, or informants which occur before the witness testifies or the informant communicates with law enforcement officers"); *id.*, at 19 (witness "[i]ntimidation offenses are particularly insidious and do violence to traditional notions of justice because no one can be convicted of a crime which is not reported. [Section 1512] reaches intimidation offenses committed before a crime is reported to the appropriate authorities").

Ultimately, Boileau correctly cites *Fowler,* but proceeds to apply a reasonable doubt standard when analyzing the limited facts before this Court at this stage in the proceedings. *Fowler*, though, held that the standard is not "beyond a reasonable doubt," nor even a preponderance of evidence. *See Fowler*, 563 U.S. at 678 ("The Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not."). The standard is merely a "reasonable likelihood." And as applied to this hearing, the proper standard is therefore whether *probable cause* exists that there was a "reasonable likelihood" that the communication of the information would be to a federal officer. *See id*. The facts before this Court unequivocally satisfy that standard. *See* Doc. 1.

### IV. Conclusion

This Court should find that there is probable cause to support both charges in the criminal complaint, Doc. 1.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: */s/ Francis D. Murray*
Francis D. Murray
Assistant United States Attorney
Florida Bar No. 0108567
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602
Phone: (813) 274-6000
Fax: (813) 274-6103
Email: francis.murray2@usdoj.gov

U.S. v. Boileau                                             Case No. 8:19-mj-1523-T-AAS

### CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Sara L. Mieczkowski, Esq.

*/s/ Francis D. Murray*
Francis D. Murray
Assistant United States Attorney
Florida Bar No. 0108567
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602
Phone: (813) 274-6000
Fax: (813) 274-6103
Email: francis.murray2@usdoj.gov